John Petriello (JJP-6545)
EHRLICH, PETRIELLO, GUDIN
& PLAZA
A Professional Corporation
60 Park Place
Newark, New Jersey 07102
Telephone: (973) 854-6700
Facsimile: (973) 596-1781

Stephen M. Ferguson (*pro hac vice* to be filed)
HAGAN NOLL & BOYLE LLC
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Telephone: (713) 343-0478
Facsimile: (713) 758-0146

Attorneys for Plaintiffs DISH Network
L.L.C., EchoStar Technologies L.L.C.,
and NagraStar LLC

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DISH NETWORK L.L.C., ECHOSTAR TECHNOLOGIES L.L.C., and NAGRASTAR LLC, | Civil Action No. |
| Plaintiffs, | **PLAINTIFFS' COMPLAINT** |
| v. | |
| RAJBIR SIDHU, | |
| Defendant. | |

Plaintiffs DISH Network L.L.C., a Colorado limited liability company with

its principal place of business located at 9601 South Meridian Blvd., Englewood,

Colorado 80112, EchoStar Technologies L.L.C., a Texas limited liability company

1

with its principal place of business located at 90 Inverness Circle East, Englewood, Colorado 80112, and NagraStar LLC, a Colorado limited liability company with its principal place of business located at 90 Inverness Circle East, Englewood, Colorado 80112, (collectively, "DISH Network") bring this action against Defendant Rajbir Sidhu, an individual that resides at 212 Randall Avenue, Trenton, New Jersey 08611.  DISH Network alleges as follows:

## JURISDICTION AND VENUE

1.      This action alleges violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.*, the Federal Communications Act, 47 U.S.C. § 605 *et seq.*, and the Electronic Communications Privacy Act, 18 U.S.C. § 2511 *et seq*. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1338.

2.      Defendant resides in and regularly conducts business in the State of New Jersey, and therefore is subject to this Court's personal jurisdiction.

3.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Defendant resides in this judicial district, § 1392(b)(2) because a substantial part of the events giving rise to DISH Network's claims occurred in this district, and § 1391(b)(3) because Defendant is subject to personal jurisdiction in this district. Venue is also proper in this Court under 28 U.S.C. § 1400(a) because this case asserts claims relating to the protection of copyrighted works.

## PARTIES

4.     Plaintiff DISH Network L.L.C. is a Colorado limited liability company with its principal place of business located at 9601 South Meridian Blvd., Englewood, Colorado 80112.

5.     Plaintiff EchoStar Technologies L.L.C. is a Texas limited liability company with its principal place of business located at 90 Inverness Circle East, Englewood, Colorado 80112.

6.     Plaintiff NagraStar LLC is a Colorado limited liability company with its principal place of business located at 90 Inverness Circle East, Englewood, Colorado 80112.

7.     Defendant Rajbir Sidhu is an individual that resides at 212 Randall Avenue, Trenton, New Jersey 08611.

## NATURE OF THE ACTION[1]

8.     Defendant has been circumventing DISH Network's security system and receiving DISH Network's satellite broadcasts of copyrighted television programming without payment of the required subscription fee.   Defendant

---

[1] The allegations made by DISH Network concerning the whereabouts and wrongful conduct of Defendant are based on the investigation completed to date, and with the reasonable belief that further investigation and discovery in this action will lead to additional factual support.  Therefore, DISH Network reserves the right to supplement or amend its claims and the basis for those claims, with leave of court if necessary, as additional investigation and discovery is conducted.

3

accomplished this in part by subscribing to three pirate television services known as IKS Rocket, Nfusion Private Server ("NFPS"), and Akai Japan.  Through IKS Rocket, NFPS, and Akai Japan, Defendant illegally obtained DISH Network's control words or "keys," which he then used to decrypt DISH Network's satellite signal and view DISH Network programming without authorization.  Defendant's acts violate the Digital Millennium Copyright Act, Federal Communications Act, and the Electronic Communications Privacy Act, as set forth below.

## DISH NETWORK SATELLITE TELEVISION PROGRAMMING

9.     DISH Network L.L.C. is a multi-channel video provider that delivers video, audio, and data services to approximately 14 million customers throughout the United States, Puerto Rico, and the U.S. Virgin Islands via a direct broadcast satellite system.

10.     DISH Network uses high-powered satellites to broadcast, among other things, movies, sports, and general entertainment services to consumers who have been authorized to receive such services after payment of a subscription fee, or in the case of a pay-per-view movie or event the purchase price.

11.     DISH Network contracts for and purchases the distribution rights for most of the programming broadcast on the DISH Network platform from providers such as network affiliates, motion picture distributors, pay and specialty

broadcasters, cable networks, sports leagues, and other holders of programming rights.

12.    The works broadcast by DISH Network are copyrighted.    DISH Network has the authority of the copyright holders to protect the works from unauthorized reception and viewing.

13.    DISH Network programming is digitized, compressed, and scrambled prior to being transmitted to multiple satellites located in geo-synchronous orbit above Earth.   The satellites, which have relatively fixed footprints covering the United States and parts of Canada, Mexico, and the Caribbean, relay the encrypted signal back to Earth where it can be received by DISH Network subscribers that have the necessary equipment.

14.    A DISH Network satellite television system consists of a compatible dish antenna, receiver, smart card which in some instances is internalized in the receiver, television, and cabling to connect the components.    EchoStar Technologies L.L.C. provides receivers, dish antenna, and other digital equipment for the DISH Network system.    Smart cards and other proprietary security technologies that form a conditional access system are supplied by NagraStar LLC.

15.    Each EchoStar Technologies receiver and NagraStar smart card is assigned a unique serial number that is used by DISH Network when activating the equipment and to ensure the equipment only decrypts programming the customer is

authorized to receive as part of his subscription package and pay-per-view purchases.

16.    The NagraStar conditional access system performs two interrelated functions in the ordinary course of its operation:    first, subscriber rights management, which allows DISH Network to "turn on" and "turn off" programming a customer has ordered, cancelled, or changed; and second, protection of the NagraStar control words that descramble DISH Network's satellite signal, which in turn prevents unauthorized decryption of DISH Network programming.

17.    An integral part of NagraStar's conditional access system is a smart card having a secure embedded microprocessor.    The EchoStar Technologies receiver processes an incoming DISH Network satellite signal by locating an encrypted part of the transmission known as the NagraStar entitlement control message and forwards it to the smart card.    Provided the subscriber is tuned to a channel he is authorized to watch, the smart card uses its decryption keys to unlock the message, uncovering a NagraStar control word.    The control word is then transmitted back to the receiver to decrypt the DISH Network satellite signal.

18.    Together, the EchoStar Technologies receiver and NagraStar smart card convert DISH Network's encrypted satellite signal into viewable

programming that can be displayed on the attached television of an authorized DISH Network subscriber.

## PIRACY OF DISH NETWORK PROGRAMMING

19.     Various devices have appeared on the black market over the years for the purpose of illegally decrypting or "pirating" DISH Network programming. The black market in piracy devices represents a multimillion-dollar industry in the United States.

20.     Several years ago pirates developed a method to circumvent the DISH Network security system and intercept DISH Network's satellite broadcasts using so-called "free-to-air" or "FTA" receivers ("unauthorized receivers"). Initially, this method of piracy was accomplished by loading software that contains the proprietary data and keys to DISH Network's security system ("piracy software") onto circuit chips in the unauthorized receiver, so as to mimic a legitimate NagraStar smart card.

21.     The downside of the foregoing method of signal theft is that piracy software must be regularly updated to account for and overcome changes in DISH Network's security system, such as electronic countermeasures transmitted in the satellite stream. The countermeasures have many effects, one being to change the decryption keys required to access NagraStar's control words. As a result, a new

form of satellite piracy emerged and goes by several names including "control word sharing," "Internet key sharing," or more simply "IKS."

22.    With IKS, once piracy software is loaded onto an unauthorized receiver, the end user connects the receiver to the Internet via a built-in Ethernet port or an add-on dongle.  The Internet connection serves two important piracy-related purposes: first, it automatically updates piracy software on the receiver; and second, the Internet connection contacts a computer server that provides the necessary NagraStar control words.

23.    The computer server, called an "IKS server," has multiple, subscribed NagraStar smart cards connected to it, and thus the ability to provide the control words.  Access to an IKS server typically requires a valid passcode.  Once access has been obtained, control words are sent from the IKS server over the Internet to an unauthorized receiver, where they are used to decrypt DISH Network's signal and view programming without paying a subscription fee.

24.    Because IKS is based on the unauthorized distribution of control words obtained from genuine, subscribed DISH Network receiving equipment, this method of piracy remains effective even after DISH Network's transition to "Nagra 3," the latest generation security technology introduced by NagraStar.

## DEFENDANT'S WRONGFUL CONDUCT

25.    IKS Rocket, Nfusion Private Server ("NFPS"), and Akai Japan are subscription-based IKS services, whereby members purchase a subscription to the IKS service to obtain the control words that are used to circumvent the DISH Network security system and receive DISH Network's satellite broadcasts of television programming without authorization.

26.    Thomas Dixon, a/k/a Wufman and *saben1066@hotmail.com*, sold subscriptions to IKS Rocket and NFPS.  Dixon provided DISH Network with copies of his business records pertaining to Defendant.  Dixon's records show that Defendant purchased one year subscriptions to IKS Rocket on or about August 7, August 27, and October 14, 2011, and January 1, 2012.  Defendant also purchased a one year subscription to NFPS on or about October 23, 2010.   Defendant was also a subscriber to Akai Japan in or about September through December 2011.

27.    Defendant accessed the IKS Rocket, NFPS, and Akai Japan IKS services by using an unauthorized receiver loaded with piracy software.  Each time Defendant tuned his unauthorized receiver to an encrypted DISH Network channel, the receiver requested the control word for that particular channel from the IKS Rocket, NFPS, or Akai Japan server, depending on the IKS service he was using at the time.  The IKS Rocket, NFPS, and Akai Japan server returned the control word to Defendant.   Defendant used the control word to decrypt DISH Network's

9

satellite signal and view DISH Network programming without having to purchase a subscription.

28.    Defendant's actions cause actual and imminent irreparable harm for which there is no adequate remedy at law.  Through IKS piracy, Defendant enjoys unlimited access to DISH Network programming, including premium and pay-per-view channels, causing lost revenues that cannot be fully calculated.  In addition, Defendant's actions damage the business reputations and goodwill of DISH Network, EchoStar Technologies, and NagraStar, and result in the need for costly security updates and legal actions aimed at stopping satellite piracy.

## CLAIMS FOR RELIEF

## COUNT I

**Circumventing An Access Control Measure In Violation Of The Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(1)**

29.    DISH Network repeats and realleges the allegations in paragraphs 1-28.

30.    Defendant has been circumventing the DISH Network security system in violation of 17 U.S.C. § 1201(a)(1) by the acts set forth above, including his receipt of NagraStar's control words from IKS Rocket, NFPS, and Akai Japan and his use of those pirated control words to decrypt DISH Network's satellite transmissions of television programming.

31.    The DISH Network security system is a technological measure that effectively controls access to, copying, and distribution of copyrighted works. Defendant's actions that constitute violations of 17 U.S.C. § 1201(a)(1) were performed without the permission, consent, or authorization of DISH Network or any owner of copyrighted programming broadcast on the DISH Network platform.

32.    Defendant violated 17 U.S.C. § 1201(a)(1) willfully and for the purpose of commercial advantage or private financial gain.

33.    Defendant knew or should have known his actions were illegal and prohibited.   Such violations have and will continue to cause damage to DISH Network in an amount to be proven at trial.   Unless restrained and enjoined by the Court, Defendant will continue to violate 17 U.S.C. § 1201(a)(1).

## COUNT II

**Receiving Satellite Signals Without Authorization in Violation of the Federal Communications Act, 47 U.S.C. § 605(a)**

34.    DISH Network repeats and realleges the allegations in paragraphs 1-28.

35.    Through IKS Rocket, NFPS, and Akai Japan, Defendant has been receiving NagraStar's control words and DISH Network's satellite transmissions of television programming for his own benefit and without authorization in violation of 47 U.S.C. § 605(a).

11

36.     Defendant violated 47 U.S.C. § 605(a) willfully and for purposes of commercial advantage or private financial gain.

37.     Defendant knew or should have known his actions were illegal and prohibited.   Such violations have and will continue to cause damage to DISH Network in an amount to be proven at trial.   Unless restrained and enjoined by the Court, Defendant will continue to violate 47 U.S.C. § 605(a).

## COUNT III

**Intercepting Satellite Signals in Violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2511(1)(a) and 2520**

38.     DISH Network repeats and realleges the allegations in paragraphs 1-28.

39.     Through IKS Rocket, NFPS, and Akai Japan, Defendant has been intercepting NagraStar's control words and DISH Network's satellite transmissions of television programming in violation of 18 U.S.C. §§ 2511(1)(a) and 2520.

40.     Defendant violated 18 U.S.C. §§ 2511(1)(a) and 2520 for tortious and illegal purposes, or for commercial advantage or private financial gain.

41.     Defendant's interception was intentional, and therefore illegal and prohibited. Such violations have and will continue to cause damage to DISH Network in an amount to be proven at trial.   Unless restrained and enjoined by the Court, Defendant will continue to violate 18 U.S.C. §§ 2511(1)(a) and 2520.

## **PRAYER FOR RELIEF**

WHEREFORE, DISH Network L.L.C., EchoStar Technologies L.L.C., and NagraStar LLC seek judgment against Defendant as follows:

A.     For a grant of permanent injunctive relief restraining and enjoining Defendant, and his employees, agents, representatives, attorneys, and all persons acting or claiming to act on his behalf or under his direction or authority, and all persons acting in concert or in participation with him, from circumventing the DISH Network security system or receiving without authorization DISH Network's satellite transmissions of television programming;

B.     For an order impounding all unauthorized receivers, dongles, software, and other devices, components, or parts thereof in the custody or control of Defendant that the Court has reasonable cause to believe were involved in a violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201, or the Communications Act, 47 U.S.C. § 605;

C.     Award DISH Network the greater of its actual damages together with any profits made by Defendant that are attributable to the violations alleged herein, or statutory damages in the amount of up to $2,500 for each violation of 17 U.S.C. § 1201(a)(1), pursuant to 17 U.S.C. §§ 1203(c)(2) and 1203(c)(3)(A);

D.    Award DISH Network the greater of its actual damages together with any profits made by Defendant that are attributable to the violations alleged herein, or statutory damages in the amount of up to $10,000 for each violation of 47 U.S.C. § 605(a), pursuant to 47 U.S.C. § 605(e)(3)(C)(i).  DISH Network seeks to increase that amount up to $100,000 for each violation, at the Court's discretion, in accordance with 47 U.S.C. § 605(e)(3)(C)(ii);

E.    Award DISH Network the greater of its actual damages together with any profits made by Defendant that are attributable to the violations alleged herein, or statutory damages in the amount of $100 per day for each violation of 18 U.S.C. §§ 2511(1)(a) or $10,000, pursuant to 18 U.S.C. § 2520(c)(2);

F.    Award DISH Network punitive damages pursuant to 18 U.S.C. § 2520(b)(2);

G.    For an award of DISH Network's costs, attorneys' fees, and investigative expenses under 17 U.S.C. § 1203(b)(4)-(5), 47 U.S.C. § 605(e)(3)(B)(iii), and 18 U.S.C. § 2520(b)(3);

H.    For pre and post-judgment interest on all damages, from the earliest date permitted by law at the maximum rate permitted by law; and

I.      For such additional relief as the Court deems just and equitable.

                                Respectfully submitted,

Dated:  June 12, 2014           EHRLICH, PETRIELLO, GUDIN &
                                PLAZA
                                A Professional Corporation


                        By:     s/ John Petriello_____
                                John Petriello (JJP-6545)
                                john@lep-lawyers.com
                                60 Park Place
                                Newark, New Jersey 07102
                                Telephone: (973) 854-6700
                                Facsimile: (973) 596-1781

                                HAGAN NOLL & BOYLE LLC
                                Stephen M. Ferguson (*pro hac vice* to be filed)
                                stephen.ferguson@hnbllc.com
                                Two Memorial City Plaza
                                820 Gessner, Suite 940
                                Houston, TX 77024
                                Telephone: (713) 343-0478
                                Facsimile: (713) 758-0146

                                Attorney for Plaintiffs DISH Network
                                L.L.C., EchoStar Technologies L.L.C.,
                                and NagraStar LLC

15

## **RULE 11.2 CERTIFICATION**

Pursuant to L. Civ. R. 11.2, the undersigned counsel for the Plaintiffs hereby certifies that this matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Dated: June 12, 2014

By: s/ John Petriello_____
John Petriello (JJP-6545)
john@lep-lawyers.com
EHRLICH, PETRIELLO, GUDIN
& PLAZA
A Professional Corporation
60 Park Place
Newark, New Jersey 07102
Telephone: (973) 854-6700
Facsimile: (973) 596-1781